UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

**FILED**

SEP 3 0 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

DR. JOSEPH AARON WEINSTOCK,
13 Avocado Street
Valle Verde I
Pasig City, Metro Manila
Philippines

        Plaintiff,

vs.

STEPHEN P. GROFF
7614 Carteret Rd
Bethesda, MD 20817-2021,

        Defendant.

Case. No.:

**COMPLAINT**

**JURY TRIAL REQUESTED**

CASE NUMBER 1:05CV01931

JUDGE: Ellen Segal Huvelle

DECK TYPE: Personal Injury/Malpractice

DATE STAMP: 09/30/2005

Plaintiff, Dr. Joseph Aaron Weinstock, sues Defendant, Stephen Groff and alleges:

**Jurisdiction And Venue**

1. By this lawsuit, Plaintiff seeks damages of One Million Dollars ($1,000,000) against Defendant for defamation and slander.

2. Jurisdiction of this Court is invoked pursuant to the provisions of 28 U.S.C. §1332(a)(1) as Plaintiff and Defendants are citizens of different states.

3. Venue in this district is proper as a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia.

**Parties**

4. Plaintiff, Dr. Joseph Aaron Weinstock is a resident of the state of Indiana and is temporarily domiciled in the Philippines and is a citizen of the United States.

5. Defendant, Stephen P. Groff is a resident of the state of Maryland.

## General Allegations

6. On or about February 8, 2005, Plaintiff submitted a resume to FutureStep, a Korn/Ferry Company for the position of Managing Director, Environmental and Social Assessments in the Markets and Sector Assessment Department of the Millennium Challenge Corporation. ("MCC"). At that time, Plaintiff was employed by the Asian Development Bank ("ADB") in the Philippines.

7. On February 18, 2005, Wezi Kachipande, a Professional Recruiter at FutureStep requested that prior to presenting Plaintiff's qualifications to the MCC, she needed to gather preliminary information from Plaintiff such as his availability, citizenship status, and salary requirements. Additionally, Ms. Kachipande related that the position was full time permanent, working in Roselyn, Virginia, with frequent travel (1-2 weeks monthly). The salary requirements would have a base in the $140,000 to $145,000 range.

8. In response, on February 17, 2005, Plaintiff provided the requested information to Ms. Kachipande. Subsequently, Ms. Kachipande determined that Plaintiff was well qualified for the aforementioned MCC position and thus forwarded Plaintiff's information to the MCC for consideration for the position.

9. In or about March 17, 2005, Defendant – a former ADB staff member who knew Plaintiff only slightly and who at that time worked for MCC – visited Manila in the Philippines and had an informal meeting with Plaintiff. Prior to this meeting Defendant stated to Plaintiff that he was in another department of the MCC from the department in which Plaintiff was being considered for employment. Defendant additionally stated that someone from the MCC Markets and

Sector Assessment Department would contact Plaintiff about interviewing him.

10.     During Defendant's meeting with Plaintiff they had a brief 20 minute meeting during which Plaintiff inquired about the philosophy and operation of the MCC and Defendant spoke of the high cost of housing the District of Columbia area. Defendant specifically told Plaintiff that their meeting was not an interview. At no time did Plaintiff and Defendant ever speak of the position for which Plaintiff had applied or of Plaintiff's experience and qualifications for the position.

11.     After not getting any formal response from the MCC on the position Plaintiff sought, on May 5, 2005, Plaintiff followed up with Ms. Kachipande regarding the position at MCC.

12.     In response, Ms. Kachipande related that MCC had advised that Defendant did pre-screen Plaintiff in Manila and suggested that Plaintiff's background is not a not a good fit and that at this time, MCC is not recommending pursuing Plaintiff's candidacy for the position of Managing Director, Environmental and Social Assessments any further.

13      Subsequently, Ms. Kachipande related that MCC was looking for someone with more management experience than Plaintiff possessed. Further, on June 7, 2005, Mr. Fehrer, head of the Human Resources Department of the MCC, said to Plaintiff that Defendant had stated to him that Plaintiff had "no management experience". Defendant doesn't know Plaintiff personally and they never spoke of Plaintiff's management experience during the 20 minute social visit in March 2005. As such, Defendant had absolutely no basis to make such a statement.

### First Claim for Damages
### Defamation

14.     Plaintiff re-alleges paragraphs 1 through 13 and incorporates them herein by reference.

3

15. Defendant published a false statement about the Plaintiff, to wit, in sum and substance that Plaintiff was not qualified as he had no management experience.

16. Such false statement was published to a third party, to wit, members of FutureStep and MCC who used such false statement to deny Plaintiff the position of Managing Director, Environmental and Social Assessments in the Markets and Sector Assessment Department of the MCC.

17. The falsity of each of the statements by Defendant caused injury to the Plaintiff by denying him the position of Managing Director, Environmental and Social Assessments in the Markets and Sector Assessment Department of the MCC and tending to injure Plaintiff in his trade, profession or community standing, and/or lower him in the estimation of the professional community to which he belongs.

WHEREFORE, Plaintiff demands damages against Defendant of One Million Dollars ($1,000,000) and costs and such other relief as the Court deems appropriate and just.

## Second Claim for Damages
### Tortious Interference with Prospective Advantage

18. Plaintiff re-alleges paragraphs 1 through 13 and incorporates them herein by reference.

19. Plaintiff had a reasonable expectation of entering into a valid business relationship with MCC.

20. Defendant knew of Plaintiff's aforesaid expectancy.

21. Defendant purposefully interfered by stating that Plaintiff had no management experience which prevented the Plaintiff's legitimate aforesaid expectancy from being fulfilled.

22.  As a result, Plaintiff had been damaged by Defendant's aforesaid interference.

WHEREFORE, Plaintiff demands damages against Defendant of One Million Dollars ($1,000,000) and costs and such other relief as the Court deems appropriate and just.

### Third Claim for Damages
### Reckless Misrepresentation

23.  Plaintiff re-alleges paragraphs 1 through 13 and incorporates them herein by reference.

24.  Defendant asserts a fact as of his own knowledge, to wit, that Plaintiff had no management experience, without knowing whether it is true or false.

25.  In fact, Plaintiff has extensive management experience.

26.  As a result, Plaintiff had been damaged by Defendant's aforesaid reckless misrepresentation.

WHEREFORE, Plaintiff demands damages against Defendant of One Million Dollars ($1,000,000) and costs and such other relief as the Court deems appropriate and just.

Plaintiff demands a Jury Trial on all issues so triable.

**MONTGOMERY BLAIR SIBLEY**
Rodriguez, Sibley & Mendoza, L.L.P.
Attorneys for Plaintiff
1717 K Street, Suite 600
Washington, D.C. 20036
Voice:      (202) 508-3699
Fax:         (202) 478-0371

By: _____
Montgomery Blair Sibley
D.C. Bar #464488